IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MOHAMMAD ZUBAIR SAFDAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-3757 |
| | § | |
| AFW, INC., et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Defendants' Motion to Set Aside Default Judgment or, in the Alternative, Motion to Vacate Default Judgment (Doc. 19) and Defendants' Motion for Leave of Court to Late File Their Original Answer (Doc. 20). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** both motions.

**I.  Case Background**

Plaintiff filed this action against his former employer and others to recover unpaid overtime wages pursuant to the Fair Labor Standards Act.[2]

**A.  Procedural History**

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 26-28.

[2] 29 U.S.C. §§ 201-219.

Plaintiff filed the lawsuit on October 11, 2010.[3] The summons accompanying Plaintiff's complaint stated:

> A lawsuit has been filed against you.
>
> Within 21 days after service of this summons on you (not counting the day you received it) . . . [,] you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: [attorney's name and address]
>
> If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.[4]

In January, 2011, Plaintiff sought an extension of time to complete the joint discovery/case management plan because he had been unsuccessful in serving Defendants and was pursuing service via private service processor.[5]

Plaintiff served Defendant Abdul Shakoor Akhter ("Akhter") by leaving the summons with his wife at his residence on March 9, 2011.[6] Although Defendant Akhter was also identified as the registered agent for the corporate defendants, the process server did not leave the summonses for the corporations but sought to serve them on

---

[3] See Doc. 1, Compl.

[4] See, e.g., Doc. 7, Summons in a Civil Action.

[5] Doc. 5, Pl.'s Mot. to Enlarge Time for Joint Disc./Case Mgmt. Plan & Initial Pretrial & Scheduling Conference, p. 1.

[6] Doc. 8, Pl.'s (2nd) Mot. to Enlarge Time for Joint Disc./Case Mgmt. Plan & Initial Pretrial & Scheduling Conference, pp. 1-2; Doc. 7, Proof of Service.

Defendant Akhter personally.[7] The process server visited Defendant Akhter's purported place of business to serve him as agent for the corporations and, on the first three occasions was told that Defendant Akhter was not there.[8] On the fourth visit, the manager told the process server that Defendant Akhter no longer owned the business, as of July 2009.[9] As of mid-April 2011, Plaintiff still had not been able to serve the corporate defendants through their registered agent despite numerous attempts to do so and resorted to substituted service upon the Secretary of State of Texas.[10] In late April, the corporate defendants were served through the Secretary of State of Texas.[11]

Plaintiff also experienced difficulty serving Defendant Mukhtar Ishaq ("Ishaq").[12] The process server attempted service at Defendant Ishaq's place of business several times without success but finally was able to deliver the summons to an adult at Defendant Ishaq's

---

[7] Doc. 8, Pl.'s (2nd) Mot. to Enlarge Time for Joint Disc./Case Mgmt. Plan & Initial Pretrial & Scheduling Conference, p. 3.

[8] Doc. 23-1, Ex. A to Pl.'s Resp. to Defs.' Mot. to Set Aside Default J. or, in the Alternative, Mot. to Vacate Default J. ("Pl.'s Resp."), President's Due Diligence.

[9] Id.

[10] See Doc. 8, Pl.'s (2nd) Mot. to Enlarge Time for Joint Disc./Case Mgmt. Plan & Initial Pretrial & Scheduling Conference, pp. 3-4; Doc. 23-1, Ex. A to Pl.'s Resp., President's Due Diligence.

[11] See Docs. 10-12, Proof of Serv. Docs. as to Defs. AFW, Inc., SLC, Inc., & Moss Masa Corp.

[12] See Doc. 13, Pl.'s (3rd) Mot. to Enlarge Time for Joint Disc./Case Mgmt. Plan & Initial Pretrial & Scheduling Conference, p. 2.

residence in late June.[13] By the time Defendant Ishaq was served, all four of the other defendants were in a default posture, having failed to file answers or make any other attempt to defend this lawsuit.[14] On September 2, more than two months after the last defendant was served and approximately six months after the first was served, Plaintiff filed a motion for entry of default and default judgment against all five defendants.[15] The court granted the motion and entered final judgment on September 13, 2011.[16]

In their first contact with the court, Defendants filed a motion for relief from the judgment and a motion for leave to file an answer on October 5, 2011.[17] Plaintiff opposed to both motions.[18] While Defendants' motions have been pending, the parties consented to the jurisdiction of the undersigned.[19] Also in the interim, the

---

[13] See id.; Doc. 15, Proof of Serv. Doc. as to Def. Ishaq.

[14] See Doc. 13, Pl.'s (3rd) Mot. to Enlarge Time for Joint Disc./Case Mgmt. Plan & Initial Pretrial & Scheduling Conference, p. 2.; Doc. 15, Proof of Serv. Doc. as to Def. Ishaq.

[15] See Doc. 16, Pl.'s Mot. for Entry of Default & for Default J. Against All Defs.

[16] Doc. 17, Ordered Dated Sept. 13, 2011; Doc. 18, Final J.

[17] Doc. 19, Defs.' Mot. to Set Aside Default J. or, in the Alternative, Mot. to Vacate Default J. ("Defs.' Mot. to Set Aside"); Doc. 20, Defs.' Mot. for Leave to Late File Original Answer ("Defs.' Mot. for Leave").

[18] See Doc. 23, Pl.'s Resp.; Doc. 24, Pl.'s Resp. to Defs.' Mot. for Leave.

[19] See Doc. 28, Consent to Proceed before Magis. J. & Order Transferring Case.

court has entered several orders granting writs of garnishment.[20]

The court now addresses Defendants' pending motions.

**B. Competing Affidavits**

Accompanying the motions and responses were competing affidavits by Defendant Akhter and Plaintiff.[21]

### 1. Defendant Akhter's Affidavit Testimony

Defendant Akhter, who is the director and president of Defendant AFW, Inc., and the director of both Defendants SLC, Inc., and Moss Masa Corporation, stated that Plaintiff worked as a salesman for AFW, Inc., at one of its two locations "from February through April 2007."[22] For the work that Plaintiff performed during that time, Defendant Akhter asserts that Plaintiff was "paid full and fair wages."[23] Defendant Akhter denied that Plaintiff ever worked for Defendants Akhter (individually), SLC, Inc., or Moss Masa Corporation.[24]

According to Defendant Akhter, Defendant AFW, Inc., no longer

---

[20] See Doc. 31, Sealed Order Dated Dec. 1, 2011; Doc. 32, Sealed Order Dated Dec. 1, 2011; Doc. 34, Order Dated Dec. 7, 2011; Doc. 37, Order Dated Dec. 15, 2011.

[21] See Doc. 19-1, Ex. 1 to Defs.' Mot. to Set Aside, Def. Akhter's Aff.; Doc. 20-1, Ex. 1 to Defs.' Mot. for Leave, Def. Akhter's Aff.; Doc. 23-2, Ex. B to Pl.'s Resp., Pl.'s Aff. The copies of Defendant Akhter's affidavit that are attached to Defendants' motions are identical. For the court's convenience, it cites for the remainder of this opinion only to the copy attached to Defendants' motion to set aside or vacate the default judgment.

[22] Doc. 19-1, Ex. 1 to Defs.' Mot. to Set Aside, Def. Akhter's Aff., ¶¶ 2-4, 7, 10.

[23] Id. at ¶ 11.

[24] Id. at ¶¶ 6, 13, 15.

operates as Affordable Furniture at either location, is not involved in the operation of any of the other locations listed by Plaintiff in the complaint, and is no longer in the furniture retail business.[25] He also stated that Defendants SLC, Inc., and Moss Masa Corporation are not and never have been in the retail business.[26]

In his affidavit, Defendant Akhter explained his version of what occurred after Plaintiff filed this lawsuit.[27] He asserted that he received the summons via mail and believed that service was not proper because it was not in person.[28] "[S]oon after" receipt of the summons, Defendant Akhter contacted Plaintiff on April 19, 2011.[29]

According to Defendant Akhter, Plaintiff said that "he was angry and upset that he lost money in a business venture with my stepson[] and believed he could get [Defendant Akhter] to pay for his losses through this lawsuit."[30] Plaintiff apologized, according to Defendant Akhter, "for having dragged [him] in to this lawsuit, saying the corporations and [Defendant Akhter] should not have been

---

[25] Id. at ¶¶ 8, 9.

[26] Id. at ¶¶ 12, 14.

[27] See id. at ¶¶ 16-18, 20-28.

[28] Id. at ¶ 16. This statement is contradicted by the Proof of Service as to Defendant Akhter, which states that the summons and complaint were left with his wife at his residence. See Doc. 7, Proof of Service.

[29] Id. at ¶ 17.

[30] Id. at ¶ 18.

sued."[31]  The affidavit further stated that Plaintiff represented to Defendant Akhter that Plaintiff was working with his attorney to drop Defendant Akhter from the lawsuit.[32]  To which, Defendant Akhter responded with an offer to pay Plaintiff "$3,000 or $4,000" to dismiss the lawsuit.[33]

Plaintiff informed Defendant Akhter that Plaintiff's attorney was out of the country and that Plaintiff planned to leave for Pakistan in early July 2011, per Defendant Akhter's testimony.[34]  Defendant Akhter affirmed that Plaintiff promised to call before he left.[35]  When Defendant Akhter followed up in late June 2011, he recounted, he sought Plaintiff's promise to dismiss the lawsuit for a payment of money, but Defendant Akhter was informed that Plaintiff already had left the country.[36]

On September 20, 2011, Plaintiff called Defendant Akhter to tell him that "[he] had always helped [Plaintiff] in the past, that [Plaintiff] had nothing against [Defendant Akhter] personally and only initially filed the lawsuit in order to get some money out of [Defendant Akhter], and that [Plaintiff] now felt bad about the

---

[31] Id. at ¶ 20.

[32] Id.

[33] Id.

[34] Id. at ¶ 22.

[35] Id.

[36] Id. at ¶ 23.

Court judgment," Defendant Akhter testified.[37]

Defendant Akhter stated that he believed the lawsuit would be dismissed against him and the corporations and, therefore, chose not to do anything more than contact Plaintiff, that he relied on Plaintiff's promise to dismiss the lawsuit and thus did not contact an attorney, and that he did not act sooner because he thought he had not been properly served.[38] Defendant Akhter admitted that he did not seek legal advice until the court entered a default judgment against him.[39]

**2. Plaintiff's Affidavit Testimony**

Plaintiff's affidavit contradicts, inter alia, Defendant Akhter's assertions regarding the length of employment, the number of stores Defendants operated, and the content of their post-suit conversations.[40] To begin with, Plaintiff claimed that he worked for Defendants at five of nine Affordable Furniture locations[41] from October 2000 until January 5, 2009.[42]

Plaintiff agreed that Defendant Akhter called Plaintiff twice

---

[37] Id. at ¶ 27.

[38] Id. at ¶¶ 24-25, 28.

[39] Id. at ¶ 26.

[40] Doc. 23-2, Ex. B to Pl.'s Resp., Pl.'s Aff., ¶¶ 4-5, 8-13.

[41] Plaintiff submitted webpages from the Affordable Furniture website and from Facebook that both list nine Affordable Furniture locations. See Doc. 23-4, Ex. D to Pl.'s Resp., Affordable Furniture Webpages, pp. 4-8 (unnumbered).

[42] Doc. 23-2, Ex. B to Pl.'s Resp., Pl.'s Aff., ¶ 5.

after the suit was filed but remembered the discussions very differently.[43] According to Plaintiff, Defendant Akhter threatened Plaintiff in order to get him to dismiss the lawsuit, to which Plaintiff suggested Defendant Akhter call Plaintiff's attorney.[44] During the phone call, Plaintiff said that he had no interest in speaking with Defendant Akhter, per Plaintiff's affidavit account.[45]

In his affidavit, Plaintiff also denied ever indicating that Defendant Akhter or his companies would be dismissed from the lawsuit or that Plaintiff was working with his attorney to do so.[46] He further denied apologizing to Defendant Akhter, informing him that Plaintiff's attorney was out of the country or that Plaintiff planned to travel to Pakistan in July, or indicating that he had been upset about losing money in a business venture with Defendant Akhter's stepson.[47] Plaintiff also completely rejected what Defendant Akhter reported as the content of a telephone call on September 20, 2011.[48] Specifically, Plaintiff stated that he did not tell Defendant Akhter that he had always helped Plaintiff, that Plaintiff had nothing against him personally, that Plaintiff had

---

[43]   See id. at ¶¶ 8-14.

[44]   Id. at ¶ 8.

[45]   Id.

[46]   Id. at ¶¶ 10, 12, 14.

[47]   Id. at ¶¶ 9-11.

[48]   Id. at ¶ 13.

filed the lawsuit in order to get some money out of Defendant Akhter, or that Plaintiff felt bad about the judgment.[49]

## II. Legal Standard

Federal Rule of Civil Procedure ("Rule") 55(c) states that an entry of default may be set aside for good cause, and a default judgment may be set aside under Rule 60(b).  This language, which was effective December 2007, makes apparent that entries of default and default judgments are reviewed under two separate standards.[50] Cf. In re Marinez, 589 F.3d 772, 777 (5th Cir. 2009)(addressing a bankruptcy claim and quoting In re OCA, Inc., 551 F.3d 359, 370 n. 29 (5th Cir. 2008), which states that the revised wording of Rule 55(c) "may confirm that the 'good-cause' standard applicable to entries of default does not apply to default-judgment cases"). Applying the current wording to a case in which both an entry of default and a default judgment have been entered, the default judgment may be reversed if the complaining party satisfies Rule 60(b) and, if that party also demonstrates good cause for the default, the entry of default preceding judgment may be vacated as well.  See Fed. R. Civ. P. 55(c).

---

[49] Id.

[50] The prior version of Rule 55(c) read, "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."  The Fifth Circuit found the pre-2007 wording open to the interpretation that the good-cause standard applied to the review of default judgments under Rule 60(b) as well as to entries of default.  See In re Marinez, 589 F.3d at 777 (quoting In re OCA, Inc., 551 F.3d at 369).

Rule 60(b) provides relief from a judgment under certain circumstances, including: 1) "mistake, inadvertence, surprise, or excusable neglect;" and 2) "fraud . . ., misrepresentation, or misconduct by an opposing party." Considerations underlying the framework of a Rule 60(b) analysis:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to do substantial justice; (4) whether the motion was made within a reasonable time; (5) whether-if the judgment was a default or a dismissal in which there was no consideration of the merits-the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgment, and there is merit in the movant's claim or defense; (6) whether there are any intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack.

In re Marinez, 589 F.3d at 777 (quoting Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 356 (5th Cir. 1993)). Although default judgments are disfavored as a matter of policy, that policy "is counterbalanced by considerations of social goals, justice and expediency, a weighing process that lies largely within the domain of the trial judge's discretion." Rogers v. Hartford Life & Accident Ins. Co., 167 F.3d 933, 936 (5th Cir. 1999)(internal alterations omitted)(quoting Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)); see also Broussard v. Johnson, No. 00-40295, 254 F.3d 71, at *2 (5th Cir. Apr. 27, 2001)(unpublished)("An important component of the rule 60(b)(1) analysis . . . is the concern that the court not disturb the finality of a judgment without good reason.").

11

With regard to Rule 60(b)(1), the United States Supreme Court ("Supreme Court") explained that the assessment of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. LP</u>, 507 U.S. 380, 395 (1993)(addressing a bankruptcy claim). The Supreme Court identified three factors to consider: 1) the danger of prejudice; 2) the length of the delay and its impact; and 3) "the reason for the delay including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." <u>Id.</u>

In the past, the Fifth Circuit has employed similar determining factors: 1) "the culpability of defendant's conduct;" 2) "the extent of prejudice to the plaintiff;" and 3) "the merits of the defendant's asserted defense."[51] <u>Rogers</u>, 167 F.3d at 938-39 (internal alterations omitted)(quoting <u>Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima</u>, 776 F.2d 1277, 1280 (5th

---

[51] The court notes the similarity of these factors with those used to determine good cause in relation to entries of default. "Good cause" is assessed according to the following three factors: whether the default was willful; whether setting it aside would prejudice the opposing party, and whether a meritorious defense is presented. <u>In re Marinez</u>, 589 F.3d at 777 (quoting <u>Jenkens & Gilchrist v. Groia & Co.</u>, 542 F.3d 114, 119 (5th Cir. 2008)). Cases have applied these factors with and without acknowledging the incorporation of the Rule 55(c) good-cause standard. <u>See</u> <u>Rogers</u>, 167 F.3d at 938-39 (listing factors as applying to Rule 60(b)(1) without referring to the good-cause standard); <u>In re OCA, Inc.</u>, 551 F.3d at 369, 370 n.29 (noting the incorporation of the good-cause standard under the previous version of Rule 55(c), which it applied); <u>Hutchins v. 3 Pickwick, LLC</u>, Civil Action No. 6:08-cv-00060, 2008 WL 4346688, at *3-4 (S.D. Tex. 2008)(unpublished)(applying the factors without mentioning Rule 55(c)). In <u>Rogers</u>, however, the court explicitly stated that the Rule 60(b)(1) standard did not assess willfulness but the lower standard of culpability. <u>Rogers</u>, 167 F.3d at 943. The court understands that as an indication that, despite the similarity of factors between the good-cause and excusable-neglect standards, they are different.

Cir. 1985)).  Noting that these factors are not talismanic, the Fifth Circuit indicated that a court may consider other factors in its discretion.  See id. at 939.

In order to prevail under Rule 60(b)(3), a defendant must show that the plaintiff engaged in fraud or other misconduct and that the fraud or misconduct prevented the defendant from presenting a case fully and fairly.  Williams v. Thaler, 602 F.3d 291, 311 (5th Cir.), cert. denied ___ U.S. ___, 131 S. Ct. 506 (2010); see also Hesling v. CSX Transp., Inc., 396 F.3d 632, 641 (5th Cir. 2005).  The burden of proof is clear and convincing.  Williams, 602 F.3d at 311.

### III. Analysis

Defendants seek relief from the default judgment on the basis of surprise or excusable neglect and/or fraud, misrepresentation, or other misconduct.

**A.  Surprise or Excusable Neglect**

Defendants claim that they were surprised when Plaintiff filed a motion for entry of default and default judgment.  However, Plaintiff's action should not have come as a surprise.  The summonses that issued to Defendants notified them that they must answer the complaint within twenty-one days after service.  Unsupported challenges to the manner or form of the individuals' service aside,[52] no defendant denies receiving a summons.  Defendant

---

[52] Defendant Ishaq briefly mentions a defective service of citation based on the address listed being a business.  Absent citation to legal authority and development of this argument, it is not incumbent on the court to explore

13

Ishaq was the last served, and he received the summons on July 11, 2011, two months prior to Plaintiff's motion for default.

Defendants attribute their surprise to what they perceived as a change of course from Plaintiff's alleged representation that he was willing to dismiss the lawsuit to his decision to seek default judgment. Businessmen, such as Defendants Akhter and Ishaq[53] who operated several companies, must have been aware that, until Plaintiff acted on his alleged promise, the possibility existed that Defendants could be found in default. Under the facts of this case, default should have been anticipated, even by someone without legal training. In fact, Defendant Akhter testified that he followed up in June 2011 with Plaintiff seeking a promise in writing that he would dismiss the case in exchange for money. Obviously, Defendant Akhter realized, at the point, that he and the other defendants were answerable to a lawsuit. A default judgment three months later, given that none of the defendants had filed an answer, should not have elicited surprise. Cf. Fed. Sav. & Loan Ins. Corp. v. Kroenke, 858 F.2d 1067, 1070 (5th Cir. 1988)(finding that "reliance on vague understandings" with the opposing party regarding an extension and

---

this defense. The record is clear that Defendant Ishaq was served by way of personal delivery to an adult at his place of residence. See Doc. 15, Proof of Service. Defendant Akhter claims that he was served by mail, but this is contradicted by the return of summons that indicates personal service to an adult at his place of residence. See Doc. 7, Proof of Service.

[53] Defendant Ishaq did not submit an affidavit, and Defendant Akhter does not explain Defendant Ishaq's role in the corporate defendants. However, Plaintiff's complaint states that Defendant Ishaq was involved in the management and operation of the companies. See Doc. 1, Pl.'s Compl., ¶¶ 33-43.

settlement negotiations was not enough to meet the surprise or excusable-neglect standard).

Defendants' argument in favor of excusable neglect fares no better. The court begins and ends with the culpability of Defendants' conduct. See Rogers, 167 F.3d at 938-39 (not discussing the issues of prejudice and meritorious defenses after finding culpability alone justified the district court's denial of a Rule 60(b)(1) motion); Levitt-Stein v. Citigroup, Inc., 284 Fed. App'x 114, 116 n.2 (5th Cir. 2008)(unpublished)(noting that it did not need to address prejudice or merits because the movant failed to show excusable neglect).

The docket reflects that Plaintiff and the process servers he hired went to great lengths to serve the Defendants, to the point that it appears that Defendants were evading service. All of the Defendants eventually received notice of the lawsuit and notice of the requirement that they answer the complaint. Yet, all chose not to file timely answers or to hire attorneys.

Without consulting an attorney, Defendant Akhter concluded that he had not been served properly and chose not to act until, over a month after being served, when he contacted Plaintiff directly. By that time, Defendant Akhter already was in a default posture. After receiving what, by Defendant Akhter's own account, was a mere promise from Plaintiff to dismiss the lawsuit, Defendant Akhter waited at least three more months to follow up with Plaintiff.

Defendant Akhter did not reach Plaintiff on that second occasion. Defendant Akhter's testimony does not suggest that he had any basis for believing the lawsuit had been dismissed. Even so, Defendant Akhter made no effort to answer the lawsuit or hire an attorney.

The other defendants, all of whom had been served by the end of June, showed even less effort, doing nothing. Defendants took no action until after September 13, 2011, when entry of default and default judgment were entered. That is when Defendants decided that they needed an attorney. Defendants' excuses for waiting that long to act truly fail to justify the delay and make them culpable of default.

Although the court finds the culpability of Defendants' conduct to be a sufficient basis for denying their motion to vacate the default judgment, the court briefly addresses the other factors suggested by the courts. Both the Supreme Court and the Fifth Circuit consider prejudice to the plaintiff. See Pioneer Inv. Servs. Co., 507 U.S. at 395; Rogers, 167 F.3d at 938-39. In this case, Plaintiff has suffered the prejudice of a significant delay in the prosecution of his lawsuit but would suffer no prejudice by being required to proof his allegations.

The Supreme Court directs lower courts to look at the length of the delay and its impact. See Pioneer Inv. Servs. Co., 507 U.S. at 395. By evading service and refusing to participate in this lawsuit, Defendants caused Plaintiff to expend a significant amount

of time, effort, and resources.  Nearly a year passed between the date on which Plaintiff filed this lawsuit and the date on which the court entered default judgment.

Another consideration is whether the movant acted in good faith.  Defendants claim that the offer Defendant Akhter made to Plaintiff to settle the action was an act of good faith, but the court views the effort simply as an attempt to settle the lawsuit extrajudicially.  Defendant could have answered the lawsuit and made the same offer within the structure of litigation.

The final factor, one that is recognized by the Fifth Circuit, examines the merits of the defendant's defenses.  Defendants offer a few defenses, including that the lawsuit is barred by the statute of limitations, that Defendants Akhter and Ishaq were not served properly, and that four of the five defendants were not Plaintiff's employers.

The defenses rely on assertions in Defendant Akhter's affidavit, many of which are contradicted by Plaintiff's affidavit and other evidence.  In particular, Defendant Akhter stated that Plaintiff was employed by only Defendant AFW, Inc., and worked from February to April 2007 at one of its only two Affordable Furniture locations.  In contrast, Plaintiff testified that he worked from October 2000 to January 2009 at five of nine Affordable Furniture locations.  With regard to service, the record contains facially valid proof of service documentation as to Defendants Akhter and

Ishaq, which the court previously reviewed when it considered Plaintiff's motion for default.

Given the Defendants' actions after the lawsuit was filed, the court finds it hard to credit, even under a preponderance-of-the-evidence standard, Defendants' factual assertions. Even if Defendants have arguably meritorious defenses and Plaintiff would suffer little prejudice by reinstituting the lawsuit, these factors cannot overcome culpability, delay, and lack of good faith to justify a finding of excusable neglect. Neither Defendants' ignorance nor carelessness justify relief under Rule 60(b)(1). Rogers, 167 F.3d at 943 (quoting Ben Sager Chems. Int'l, Inc. v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977)); see also Edward H. Bohlin Co., 6 F.3d at 357 ("Gross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief.").

Defendants have failed to meet their burden of convincing the court that their neglect was excusable.

**B.    Fraud, Misrepresentation, or Other Misconduct**

The fraud, misrepresentation, or other misconduct that Defendants allege against Plaintiff is that Plaintiff allegedly told Defendant Akhter that his actual dispute was with a third party and that he would discuss with his attorney dismissing Defendant Akhter and the corporate defendants.

Defendants fail to establish the first requirement of this

subsection, to wit, that the plaintiff engaged in a fraud or misrepresentation. Defendants' burden is one of clear and convincing evidence. At best, Defendant Akhter offered accusations of fraud, misrepresentation, or misconduct, which were countered by Plaintiff's testimony. Controverted facts do not establish clear and convincing evidence but, instead, merely reveal the existence of a factual dispute.

Defendants have not met their burden of showing that Plaintiff committed a fraud or misrepresentation or that he engaged in any misconduct.

The court finds that the default judgment should not be vacated. Therefore, the court need not consider whether good cause exists to vacate the entry of default. Finally, because the judgment in this case stands, Defendants cannot file an answer at this late date.

## IV.  Conclusion

Based on the foregoing, the court **DENIES** Defendants' Motion to Set Aside Default Judgment or, in the Alternative, Motion to Vacate Default Judgment and Defendants' Motion for Leave of Court to Late File Their Original Answer.

**SIGNED** in Houston, Texas, this 13th day of January, 2012.

Nancy K. Johnson
United States Magistrate Judge